UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION



UMAR CLARK,

Plaintiff,

v.

**Nelnet, Inc.**

Defendant.

Case No.

**1:25-CV- 4575**

JURY TRIAL DEMANDED

## Pro Se Complaint for Injunctive Relief, Damages, and Correction of Credit Reporting Violations

I, Umar Clark, appearing pro se, file this Complaint against Defendant Nelnet, Inc. ("Nelnet" or "Defendant"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. I respectfully state as follows:

I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under federal law, specifically the FCRA, 15 U.S.C. § 1681 et seq., which provides for a private right of action and jurisdiction in federal district courts under 15 U.S.C. § 1681p.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2), as I reside in Decatur, Georgia, within this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District, including the inaccurate reporting that affected my credit in Georgia

## II. PARTIES

3. I, Umar Clark, am a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c). I reside in Decatur, Georgia.

4. Defendant Nelnet, Inc. is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, Nelnet is a "furnisher" of information to consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681s-2 and regularly conducts business in Georgia by servicing student loans for Georgia residents, including me. Nelnet may be served through its registered agent, Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808,

## III. FACTUAL ALLEGATIONS

5. On or about August 3, 2012, I applied for and obtained a federal student loan through the U.S. Department of Education to attend college. The loan was eventually transferred to Nelnet for servicing. At the time, I aspired to become an entrepreneur but pursued higher education based on societal expectations. I had completed high school through an alternative program and enrolled in college for one semester.

6. Nelnet services loans for millions of Americans, with a portfolio exceeding hundreds of billions of dollars. Nelnett has a history of substantial growth through acquisitions and has been subject to regulatory scrutiny for its practices.

7. I did not complete college, leaving after one semester to pursue entrepreneurship full-time.

8. Like many Americans, I lacked formal education in financial literacy and credit management. In or around August 2013, I checked my credit reports and noticed the loan was not reporting.

9. I later became a single, full-time father and faced financial struggles, resulting in the loan being placed in hardship deferment multiple times, during which interest accrued significantly.

10. In the United States, consumers are often penalized for financial ignorance without adequate education, with compounding interest exacerbating the burden.

11. Over the years, due to deferments, my loan maintained a positive payment history.

12. In 2020, the COVID-19 pandemic led to a federal pause on student loan payments, though interest continued to accrue.

13. In 2025, the federal government announced the resumption of student loan collections.

14. For most government-backed student loans, including those serviced by Nelnet, late payment reporting to CRAs begins at 90 days past due, pursuant to federal regulations and FCRA requirements. See, e.g., U.S. Dep't of Educ., Student Loan Delinquency and Default (confirming 90-day reporting threshold for federal student loans).

15. In January 2025, Nelnet inaccurately reported my account as 120 days late to Experian, a CRA. In February 2025, Nelnet again reported it as 120 days late. These reports were factually impossible and inaccurate, as I was only 90 days late in January 2025, and sequential monthly reporting cannot reflect the same 120-day delinquency back-to-back without advancing properly. This constitutes improper "re-aging" or misreporting of delinquency status, which violates FCRA provisions governing accurate reporting. See 15 U.S.C. § 1681s-2(a)(5) (requiring accurate reporting of delinquency dates); see also Lilly v. RAB Performance Recoveries, LLC, No. Civ. 12-1112 LH, 2013 WL 3834008 (D.N.M. July 23, 2013) (recognizing claims for re-aging by reporting incorrect

delinquency commencement dates).

|      | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2025 | 120 | 120 | 150 | 180 | 180 | 180 | -   | -   | -   | -   | -   | -   |
| 2024 | ND  | ✓   | ✓   | ✓   | ND  | ✓   | ✓   | ✓   | ND  | ✓   | ✓   | ✓   |
| 2023 | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   |
| 2022 | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   |
| 2021 | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   |
| 2020 | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   | ✓   |
| 2019 | ND  | ND  | ✓   | ✓   | ND  | ND  | ND  | ✓   | ✓   | ND  | ND  | ND  |
| 2018 | -   | -   | -   | -   | -   | -   | -   | -   | -   | ✓   | ✓   | ND  |

Exhibit A. My payment history from Nelnet on Experian

16. The inaccurate reporting continued: In March 2025, Nelnet reported 150 days late; in April 2025, 180 days late; in June 2025, 180 days late; and in July 2025, 180 days late. These back-to-back 180-day reports are impossible and constitute further inaccurate credit reporting under the FCRA.

17. These inaccuracies hindered my ability to obtain funding as a full-time entrepreneur and single father, causing emotional distress, including daily anxiety, loss of sleep, hair loss, and reduced appetite.

18. On January 7, 2025, I disputed the inaccuracies directly with Experian via certified mail (tracking number 9214 8901 4298 0411 9636 50), which was signed for on January 13,

2025. (See Exhibit B: Proof of mailing and delivery.)


**UNITED STATES POSTAL SERVICE**

Date Produced: 01/13/2025

LETTERSTREAM:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 4298 0411 9636 50. Our records indicate that this item was delivered on 01/10/2025 at 08:00 a.m. in COSTA MESA, CA 92628. The scanned image of the recipient information is provided below.

Signature of Recipient:

Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

19. Pursuant to 15 U.S.C. § 1681i(a)(2), Experian had five days to notify the furnisher (Nelnet) of the dispute. Experian notified Nelnet, as evidenced by dispute notes on my Experian report. (See Exhibit C: Experian dispute notes.)

**Comments**
Account previously in dispute - investigation complete, reported by data furnisher

Your statement
undefined

Exhibit C. Nelnet clearly received my dispute from Experian based on the comments on my Experian report.

20. Despite notification and provision of proof, Nelnet failed to correct the inaccuracies, violating its duties under 15 U.S.C. § 1681s-2(b).

21. I immediately requested Nelnet's method of verification and the Automated Consumer Dispute Verification ("ACDV") record from both Experian and Nelnet, pursuant to FCRA requirements for disclosing investigation procedures.

22. The ACDV is an automated record generated when a consumer disputes information with a CRA, including a dispute code notifying the furnisher.

23. Given the lack of proper investigation, I sought the ACDV to verify compliance. Nelnet responded via email that it was "working on it" but failed to provide substantive response or corrections. (See Exhibit D: Nelnet email response.)

> Dear UMAR,
>
> We've received your request for your Nelnet student loan account, and it's currently being reviewed by our team. You don't need to do anything else at this time other than make any payments due as noted on your last billing statement.
>
> Once we have finished processing your application, we'll send a letter or email (according to your communication preference on file) to you with the outcome of our review.

24. In April 2025, I sent Nelnet a demand letter requesting deletion of the account, compensation for re-aging, and zeroing out the balance. Nelnet did not respond within 30 days.

## CAUSES OF ACTION

## COUNT I: VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681s-2(b) (NEGLIGENT NON-COMPLIANCE)

25. I incorporate by reference all preceding paragraphs.

26. Nelnet, as a furnisher, had a duty under 15 U.S.C. § 1681s-2(b)(1) to, upon notice of dispute from a CRA: (A) conduct a reasonable investigation; (B) review all relevant information; (C) report results to the CRA; and (D) modify, delete, or block inaccurate information.

27. Nelnet negligently failed to conduct a reasonable investigation into my dispute, as the inaccuracies persisted despite clear evidence of impossibility (e.g., back-to-back 120-day and 180-day reports). This breached its duties, causing actual damages. See Doss v. Great Lakes Educ. Loan Servs., Inc., No. 20 C 1543, 2021 WL 1202432 (N.D. Ill. Mar. 30, 2021) (recognizing FCRA claims for failure to investigate student loan disputes).

28. As a direct result, I suffered actual damages, including denied credit opportunities, emotional distress, loss of sleep, hair loss, and appetite reduction, totaling at least $35,000.

## COUNT II: VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681s-2(b) (WILLFUL NON-COMPLIANCE)

30. I incorporate by reference all preceding paragraphs.

31. Nelnet failures were willful, as evidenced by its pattern of misconduct (e.g., CFPB action) and disregard for my dispute and demand. Willful violations entitle me to

statutory damages of $1,000 per violation and punitive damages under 15 U.S.C. § 1681n. See Saunders v. Branch Banking & Trust Co., 526 F.3d 142 (4th Cir. 2008) (affirming private action for willful furnisher violations).

32. Nelnet re-aging and inaccurate delinquency reporting further demonstrate willfulness. See 15 U.S.C. § 1681s-2(a)(5); see also cases recognizing re-aging as FCRA violations, e.g., Lilly, supra.

PRAYER FOR RELIEF

WHEREFORE, I pray that this Court:

A. Enter judgment in my favor and against Nelnet;

B. Award actual damages of $75,000;

C. Award statutory damages of $1,000 per violation;

D. Award punitive damages in an amount to be determined;

E. Grant injunctive relief, including deletion of the inaccurate information from my credit reports and zeroing out the account balance;

F. Award costs, and any other relief the Court deems just and proper.

DEMAND FOR JURY TRIAL

I demand a trial by jury on all triable issues.

Dated: August 12, 2025

Respectfully submitted,

/s/ Umar Clark

Umar Clark, Pro Se

1778 vicki ln se

Atlanta, Ga 30316

Umar.clark@yahoo.com