UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

UMAR CLARK,

      Plaintiff,

vs.

NELNET, INC.,

      Defendant.

CASE NO. 1:25-CV-04575-VMC-RGV

## NELNET'S REPLY TO THE PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS

Defendant, NELNET SERVICING, LLC (misidentified as "Nelnet, Inc.") ("Nelnet"), hereby submits this Reply to the Opposition to the Motion to Dismiss [Dkt. No. 7] of Plaintiff UMAR CLARK's ("Plaintiff"), and in support thereof states:

## ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

### A.  Plaintiff Has Failed to State a Claim Under the FCRA.

### 1.  Plaintiff Has Failed to Plausibly Allege Actual Damages Caused by a Violation of the FCRA.

Plaintiff has not established a nexus between his damages and a violation of the FCRA. *See* Dkt. No. 7, p. 5.  It goes without saying that credit denials and emotional distress can constitute actual damages in an FCRA case. *See Benjamin v. Experian Inf. Solutions, Inc.,* 561 F. Supp. 3d 1130, 1342 (N.D. Ga. 2021). But there must be causation between those damages and a violation of the FCRA. *See Marchisio v. Carrington Mortgage Servs*., LLC, 919 F.3d 1288, 1304 (11th Cir. 2019) ("The district court was correct in stating there must be a causal connection

between the violation and the emotional harm."). That is where the plausibility of Plaintiff's claim breaks down.

Here, Plaintiff alleges that his damages flow from the inaccurate information on his credit, but Section 1681s-2(a) provides no private right of action. *See Green v. RBS Nat. Bank*, 288 F. App'x 641, 642 (11th Cir. 2008). While the FCRA does provide a private right of action under Section 1681s-2(b), the duties of a furnisher under 15 U.S.C. § 1681s–2(b) "are triggered by notice that its information is being disputed from a CRA, not from the consumer." *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905, 907 (8th Cir. 2011); *Green*, 288 F. App'x at 642. Thus, to state a plausible claim under the FCRA, Plaintiff must plausibly allege that his damages flow from (1) a dispute that he made to a credit reporting agency; <u>and</u> (2) Nelnet's failure to properly investigate that dispute. *See, e.g.*, *Marchisio,* 919 F.3d at 1301–02, 1304 (assessing plaintiff's damages pursuant to a violation of Section 1681s-2(b)); 15 U.S.C. § 1681s–2(b)(1).

Plaintiff fails to allege any damages that resulted from Nelnet's supposed failure to investigate Plaintiff's dispute about Nelnet to a credit reporting agency. According to the Complaint, Plaintiff's only dispute to a credit reporting agency supposedly occurred on January 7, 2025. *See* Dkt. No. 1 ¶ 18. There are other disputes from Plaintiff alleged, but they are direct disputes to Nelnet, which do not trigger a duty to investigate under Section 1681s-2(b). *See Green*, 288 F. App'x at

642; *Anderson*, 631 F.3d at 907. Returning to the January 7, 2025 dispute, the Complaint alleges that it disputed the January 2025 reporting of a 120 day delinquency, which Plaintiff contends was inaccurate because he was actually "only 90 day's late". *See* Dkt. No. 1 ¶ 15. But Plaintiff does not allege that reporting caused him any damages.

Instead, the Complaint describes the cause of Plaintiff's damages as the "back-to-back 180-day" delinquencies reported in April, May and June 2025. *See* Dkt. No. 1 ¶ 16. Specifically, Plaintiff alleges "[t]hese inaccuracies hindered my ability to obtain funding . . . causing emotional distress." *See* Dkt. No. 1 ¶ 17. A reasonable investigation of the January 7, 2025 dispute would not, and could not, entail investigating the accuracy of Plaintiff's then-nonexistent reporting of April, May or June of 2025, because that reporting had not yet occurred. *See, e.g.*, *Anderson*, 631 F.3d at 907 (holding a furnisher "need investigate only 'what it learned about the nature of the dispute from the description in the CRA's notice of dispute.'" quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir.2009)). Thus, Plaintiff has failed to plausibly allege a nexus between Nelnet's supposed violation of the FCRA and Plaintiff's alleged actual damages.

Indeed, in the Complaint, Plaintiff does not allege that he disputed with any credit reporting agency the information Nelnet furnished in February, March, April, May or June 2025 . The closest Plaintiff comes is his allegation he "sent Nelnet" a

demand letter in April 2025, but such direct disputes are insufficient to state a claim under Section 1681s-2(b). *See Green*, 288 F. App'x at 642. Furthermore, Plaintiff's April 2025 demand letter could not plausibly have raised the "back-to-back" 180 day delinquencies that allegedly followed in May and June and that serve as a basis for Plaintiff's alleged damages in this case.

Plaintiff's attempt to distinguish *Suluki v. Credit One Bank, NA,* 138 F.4th 709 (2d Cir. 2025) is unavailing. In the Opposition, Plaintiff claims he can rely on his January 7, 2025 dispute to Experian. *See* Dkt. No. 7 p. 5. However, in the Complaint, Plaintiff alleges his damages flow not from inaccurate information plausibly identified in his January 7, 2025 dispute, but from the "back-to-back 180 day" delinquencies reported in May and June of 2025. *See* Dkt. No. 1 ¶ 17. As in *Suluki*, Plaintiff failed to dispute the reporting that purportedly caused his damages.  *See Suluki,* 138 F.4th at 721. Plaintiff therefore has no claim under Section 1681s-2(b) or Section 1681o because his actual damages allegedly flow from information could not plausibly have been the subject of his January 7, 2025 dispute.

Plaintiff attempts to excuse his failure to dispute the information furnished by Nelnet in February, March, April, May and June 2025 by alleging that the supposed inaccuracy in May and June is just a continuing harm from the information furnished in January 2025 but the allegations of the Complaint are antithetical to this allegation. Bone of the allegations of the Complaint suggest that the alleged January

4

2025 reporting had a knock-on effect on subsequent reporting. Specifically, in the Complaint, Plaintiff contends that in January 2025 he was "only 90 days late" and therefore should not have been reported 120 days late in January 2025. *See* Dkt. No. 1 ¶ 15. Even if that was true, Plaintiff does not allege that Nelnet's reporting in February, March, or April of 2025 was inaccurate. *Id.* Instead, Plaintiff merely alleges that Nelnet also furnished inaccurate information in May and June of 2025, when it reported "back-to-back" 180-day delinquencies. *See* Dkt. No. 1 ¶ 16. Thus, assuming *arguendo*, that Nelnet failed to reasonably investigate the January 2025 dispute, Plaintiff has failed to plausibly allege that an investigation into that reporting would have prevented inaccurate reporting in May or June of 2025.

For these reasons, there is no nexus between the cause of Plaintiff's alleged actual damages and any supposed failure to reasonably investigate the January 7, 2025 dispute, and Plaintiff's claim under Section 1681o should be dismissed, in its entirety.

> **B.      Alternatively, Plaintiff fails to plausibly allege that a reasonable investigation would have prevented Plaintiff's damages.**

A related but separate argument for dismissal is that Plaintiff fails to allege facts that plausibly suggest that a reasonable investigation would have prevented his damages. *See, e.g.*, *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 458 (11th Cir. 2019) (affirming dismissal). Stated differently, even if Nelnet had furnished the information Plaintiff contends Nelnet should have furnished, it is not

plausible that Plaintiff would have avoided the credit denials and resulting emotional distress from lack of credit described in the Complaint.

Indeed, Plaintiff admits he was "90 days late" in January 2025. *See* Dkt. No. 1, ¶ 14. But, Plaintiff does not allege that the reporting of delinquencies in February, March or April was inaccurate. *See generally* Dkt. No. 1. And while Plaintiff alleges the reporting of "back-to-back" 180 day delinquencies in May and June of 2025 was inaccurate, the allegations of the Complaint suggest that Plaintiff was 210 and 240 days delinquent in May and June of 2025. *Id.*  Thus, Plaintiff has not plead facts that could plausibly suggest he would have avoided the credit denials and emotional distress described in the Complaint if Nelnet had conducted a reasonable investigation.

Likewise, Plaintiff's conclusory allegations and arguments about "re-aging" fail to plausibly explain how Plaintiff's actual damages are in any way connected to such a practice. As such, Plaintiff has failed to plausibly allege how a reasonable investigation into such a practice would have resulted in the avoidance of Plaintiff's supposed actual damages. See *Lashkari-Celestin v. Caliber Homes Loans, Inc*., No. 1:19-CV-1774-AT-JSA, 2019 WL 11502784, at *12 (N.D. Ga. Sept. 25, 2019), report and recommendation adopted sub nom. *Lashkari-Celestin v. Caliber Home Loans, Inc.*, No. 1:19-CV-1774-AT, 2019 WL 11502791 (N.D. Ga. Oct. 16, 2019) ("As for the Plaintiff's allegations about 're-aging' her debt, Plaintiff alleges absolutely no

facts to explain the relevance of this term."). Thus, Plaintiff's inclusion of such buzz-words in the Complaint and Response do nothing to further Plaintiff's failed effort to state a claim under the FCRA.

Finally, Plaintiff's Complaint appears to be premised on his belief that if he disputes inaccurate information on his credit report, a reasonable investigation would have resulted in Nelnet will delete <u>all</u> reporting about the debt. *See* Dkt. No. 7 p. 4 (arguing that a violation of Section 1681s-2(a) should be remedied by "account deletion"). However, "[t]he FCRA does not require that a furnisher of information delete a consumer's disputed account upon receiving a notice of dispute, but rather, simply requires the furnisher of information to investigate and to report information from the investigation." *Jenkins v. AmeriCredit Fin. Servs., Inc*., No. 14CV5687SJFAKT, 2017 WL 1325369, at *6 (E.D.N.Y. Feb. 14, 2017) (internal quotation marks omitted). None of the supposed inaccuracies identified in the Complaint would merit the wholesale deletion of Plaintiff's account from his credit. Given the admittedly delinquent status of the account, Plaintiff has failed to plausibly allege how a reasonable investigation would have spared Plaintiff from credit denials or the emotional distress he claims to have suffered from lack of credit.

## C.    The Complaint Does Not Adequately Allege a Willful Violation of the FCRA.

Actual damages are not required for a claim under Section 1681n of the FCRA, which describes the remedies for a willful violation of the FCRA. But

Plaintiff has also failed to plausibly allege a willful violation of the FCRA because the facts alleged do not plausibly suggest a willful violation. In the Opposition, Plaintiff contends that threadbare allegations of a "pattern of misconduct (e.g. CFPB action) and disregard for my dispute and demand" are sufficient. *See* Dkt. No. 1 ¶ 31. However, the only "pattern of conduct" described in the Complaint is that Nelnet allegedly did not correct reporting after receiving one indirect dispute and then direct disputes from Plaintiff. *Id.* However, the case law is clear that even if Plaintiff sent multiple disputes, that is not enough to plausibly allege a willful violation of the FCRA, as opposed to a negligent violation. *See, e.g.*, *Rivera v. Experian*, No. 3:22-CV-1039 (MPS), 2022 WL 17370491, at *7 (D. Conn. Oct. 31, 2022) (holding "the mere allegation that plaintiff sent several letters . . . does not allow the Court to reasonably infer that Experian's alleged failure to respond constituted a willful, as opposed to negligent, violation of a reinvestigation duty . . . .")  Furthermore, there is no allegation in the Complaint that Plaintiff submitted multiple disputes to any credit reporting agency, or that he submitted <u>any</u> dispute the reporting subsequent to January 2025 to any credit reporting agency. *See generally* Dkt. No. 1.  Instead, the Complaint alleges a single dispute to a credit reporting agency on January 7, 2025. *See* Dkt. No. 1 ¶ 18.

Nor is Plaintiff's threadbare allegations about "CFPB action" enough to plausibly allege a willful violation of the FCRA. The Complaint's allegation about

CFPB action is entirely too vague to state a plausible claim that the FCRA was willfully violated. In the Opposition, Plaintiff claims that the CFPB's supervisory highlights from Winter 2024 support a finding of willfulness. *See* Dkt. No. 7 p. 6. First, the Complaint contains no such allegations, and Plaintiff cannot amend his pleading with argument in response to a motion. *See Fadem v. Ford Motor Co.,* 352 F.Supp.2d 501, 516 (S.D.N.Y.2005) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs.") Second, the argument that the CFPB's supervisory highlights have any bearing on whether a violation of the FCRA was willful or not has already been rejected by a federal circuit court of appeal. *See, e.g.*, *McIntyre v. RentGrow, Inc.,* 34 F. 4th 87, 99 (1st Cir. 2022) (CFPB action, in the form of Supervisory Highlight, was not sufficient to render defendant's alleged violation of the FCRA willful).

Nor are Plaintiff's allegations of unspecified "illegal practices" in the student loan industry sufficient to push his claim into the realm of plausibility. Dkt. No. 7 p. 6. Again, this allegation is not part of the Complaint and, even if it was, it is too vague to state a plausible claim. Furthermore, supposed legal violations by other members of the industry has no bearing on whether Nelnet acted in willful violation of the FCRA. *See, e.g.*, *Zaun v. J.S.H. Inc., of Faribault*, No. CIV. 10-2190 DWF JJK, 2010 WL 3862860, at *3 (D. Minn. Sept. 28, 2010) ("[Plaintiff] asks the Court to infer from his counsel's experience with other companies that Defendant here may

likewise have been reckless or willful in violating the FCRA's requirements. But this case does not involve other companies.")  Thus, Plaintiff has failed to plausibly allege a violation of the FCRA.

### C.    The Complaint Does Not State a Claim For Injunctive Relief.

The Response makes no effort to salvage Plaintiff's claim for injunctive relief. As set forth in greater detail, Plaintiff's request for injunctive relief should be dismissed because injunctive relief is not a remedy available under the FCRA to a private litigant. Thus, at a minimum, the Complaint should be dismissed for failure to state a claim for the relief requested, i.e. injunctive relief.

### D.    The Court Should Dismiss the Complaint With Prejudice.

In the Response, Plaintiff asks the Court to grant him leave to amend. However, the Response does not describe any means by which Plaintiff can plead around his failure to dispute the May and June 2025 reporting, which he claims caused his damages.  Nor has Plaintiff alleged the existence of additional facts which, if plead, would render plausible his allegations of a willful violation. Instead, in the Response, Plaintiff raised new facts, such as the CFPB's Supervisory Highlights, which if plead would still not state a claim for a willful violation. The Court can deny leave to amend when the proposed amendment would be futile. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020).  ("Although a district court 'should freely give leave [to amend] when justice so requires,' it may

deny leave, sua sponte or on motion, if amendment would be futile. Leave to amend would be futile if an amended complaint would still fail at the motion-to-dismiss or summary judgment stage." (quoting Fed. R. Civ. P. 15(a)(2) (internal citations omitted))). This rule also applies to pro se litigants. *See Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010) ("When it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it with prejudice. Dismissal with prejudice is proper, however, . . . if a more carefully drafted complaint could not state a valid claim." (internal citations omitted)).

Since the Response demonstrates that the additional facts Plaintiff would interpose would not cure the defects in Plaintiff's Complaint, the Court should dismiss the Complaint with prejudice.

Date: October 13, 2025.

Respectfully submitted,

**HUSCH BLACKWELL LLP**

*/s/ Madeline Leonard Phifer*
Madeline E. Leonard Phifer
GA State Bar No. 0383480
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402-2059
Tel: (423) 757-5913
Fax: (423) 266-5499
Madeline.LeonardPhifer@huschblackwell.com
*Attorneys for Defendant*
*Nelnet Servicing, LLC*

## <u>LOCAL RULE 5.1 CERTIFICATION</u>

I hereby certify pursuant to LR 5.1 that the brief has been prepared with one

of the font and point selections approved by the Court in LR 5.1(C).

**HUSCH BLACKWELL LLP**

<u>*/s/ Madeline Leonard Phifer*</u>
Madeline Leonard Phifer

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2025, I electronically filed the foregoing **REPLY TO THE OPPOSITION TO THE MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all CM/ECF registered users, and I hereby certify that I have e-mailed and mailed by United States Postal Service the document to the following:

> **Umar Clark**
> **1778 Vicki Lane SE**
> **Atlanta, GA 30316**
> <u>Umar.clark@yahoo.com</u>
> *Pro Se Plaintiff*

*/s/ Madeline Leonard Phifer*
Madeline Leonard Phifer
